UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VANESSA Y. RYAN,

       Plaintiff,

  v.              **DECISION AND ORDER**
                     06-CV-157S

BEST BUY CO. INC.,

       Defendant.

## I. INTRODUCTION

Plaintiff Vanessa Ryan commenced this action by filing a Complaint in the United States District Court for the Western District of New York, alleging that her former employer, Defendant Best Buy Co., Inc., discriminated against her in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. §§ 12112 et seq. ("ADA"), and the New York State Human Rights Law, as codified in the N.Y. Exec. Law §§ 296 et seq. ("NYSHRL"). Defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] Plaintiff opposes Defendant's Motion.[2] For the reasons discussed below, Defendant's Motion is granted.

---

[1] In support of its motion, Defendant filed the following documents: a Statement of Undisputed Material Facts, two Affidavits by Melinda G. Disare, numerous exhibits, a memorandum of law in support of the motion, and a reply memorandum of law. (Docket Nos. 21 and 23.)

[2] In opposition, Plaintiff filed a Statement of Disputed Material Facts, a memorandum of law, an Affidavit by Vanessa Y. Ryan, and numerous exhibits. (Docket No. 22.)

1

## II.  BACKGROUND

**A. Facts**

The following material facts are undisputed and taken from the parties' declarations, affidavits, exhibits and respective Local Rule 56.1 statements of facts.[3]  Plaintiff began employment with Best Buy on September 18, 2000, as an Inventory Supervisor. (Def.'s Statement, ¶ 1.[4])  At the time, Plaintiff was forty-five years old. (Def.'s Statement, ¶ 2.) As the Inventory Supervisor, Ryan supervised six employees, recorded merchandise received by Best Buy into Best Buy's computer system, maintained the condition of the Amherst store's warehouse, and scheduled customer deliveries. (Def.'s Statement, ¶ 3.)

During a routine physical in March of 2003, Plaintiff was diagnosed with Hepatitis C, and was informed that she needed a liver biopsy. (Ryan Affidavit, Docket No. 22, Pt. 3, ¶ 15; Def.'s Statement, ¶ 6.)  On or about March 24, 2003, Plaintiff faxed a handwritten letter to her Sales Manager, Rich Krawalski, stating that she needed some time off from work. (Def.'s Statement, ¶ 7; Docket No. 21, Ex. D.[5])  On March 26, 2003, Plaintiff underwent the liver biopsy. (Ryan Aff., Docket No. 22, Pt. 3, ¶ 16.)

In a note dated April 3, 2003, Dr. Rajesh Khamar, M.D., stated that "[Plaintiff] is advised to rest till [sic] 4/13/03." (Def.'s Statement, ¶ 8.)  Four days later, on April 7, 2003, Dr. Khamar provided Plaintiff with another note, which stated that she should be "off work

---

[3] This Court will deem uncontroverted factual assertions admitted to the extent they are supported by the record evidence.  See Local Rule 56.1(c) (statements of undisputed fact that are not controverted by the non-moving party are deemed admitted).

[4] Referring to Defendant's Statement of Undisputed Material Facts, which contain citations to the record evidence.  (Docket No. 21, Attach. 1.)

[5] Plaintiff's letter did not indicate when she would return, although she wrote, "I will keep you informed if I can get back sooner than the 7th . . ."  (Docket No. 21, Ex. D.)

[from] 3-22-03 to approx. 4/11/03 pending re-evaluation on 4/10/03." (Def.'s Statement, ¶ 9.)

While on medical leave due to the biopsy, Plaintiff cut a tendon in the pinky finger of her left hand. (Def.'s Statement, ¶ 10.) As a result, Plaintiff went to Excelsior Orthopaedics LLP for minor surgery. (Def.'s Statement, ¶ 11.) In a note dated April 11, 2003, a physician from Excelsior Orthopaedics stated that "Pt is out of work from 4-11-03 [to] 5-1-03." (Def.'s Statement, ¶ 12.) On April 15, 2003, Plaintiff requested a medical leave of absence from Best Buy for the period dated March 22, 2003, through May 1, 2003, due to her "surgery-liver biopsy". (Def.'s Statement, ¶ 13.)

On April 29, 2003, Plaintiff submitted a letter. (Def.'s Statement, ¶ 15.) In the letter, Plaintiff stated that Dr. Paul D. Paterson, M.D., of Excelsior Orthopaedics, would not release her to return to work "until around June 13, 2003." (Def.'s Statement, ¶ 15.) Dr. Paterson, in a note dated April 29, 2003, stated that "Pt. is totally temporary disabled pending appt. June 13, 2003." (Def.'s Statement, ¶ 16; Docket No. 21, Ex. J.)

Plaintiff returned to work on June 13, 2003. (Def.'s Statement, ¶ 17.) On July 18, 2003, Plaintiff was transferred to the lateral position "Loss Prevention Supervisor." (Def.'s Statement, ¶ 18.)

In a note dated July 19, 2003, Andrea E. Verrrastro, F.N.P.-C, of Family Care Physicians P.C., stated that she examined Plaintiff, and that there would be "no work [for Plaintiff] until further notice." (Def.'s Statement, ¶ 25.) On July 19, 2003, Plaintiff submitted a request for an indefinite medical leave beginning July 19, 2003. (Docket No. 21, Ex. L.) In support of the request, Plaintiff stated that she was suffering from "chronic disease [and] emotional distress." (Docket No. 21, Ex. L.) And in a medical certification

3

dated July 26, 2003, Verrastro stated that Plaintiff was experiencing abnormal liver enzymes, nausea, depression, drowsiness, and other medication complications. (Def.'s Statement, ¶ 22; Docket No. 21, Ex. M.) Verrastro stated that Plaintiff was unable to perform work of any kind. (Docket No. 21, Ex. M.)

On August 11, 2003, Verrastro provided Plaintiff with a note, which stated "Pt. evaluated by me today she continues to be fully disabled due to chronic illness [and] labs which reveal low Platelet ct . . . ." (Docket No. 21, Ex. N.)

Plaintiff returned to work in "mid-October." (Docket No. 22, Vanessa Ryan Affidavit, ¶ 23.[6]) But in a note dated October 23, 2003, Dr. Bertrard P. Roche, M.D., stated that "[Plaintiff] is presently disabled. Not to work until further advised." (Def.'s Statement, ¶ 27.) Plaintiff then requested another indefinite medical leave of absence to begin on October 24, 2003. (Def.'s Statement, ¶ 29.) In connection with the request, Plaintiff submitted a medical certification form, which stated that she was suffering from panic disorder, Hepatitis C, COPD, and pelvic mass. (Def.'s Statement, ¶ 34.) The form also noted that Plaintiff would be out indefinitely and that she was unable to perform work of any kind. (Def.'s Statement, ¶¶ 35-36; Docket No. 22, Ex. P.)

Approximately one month later, in a note dated November 26, 2003, Dr. Roche stated that Plaintiff "remains fully disabled until further notice." (Def.'s Statement, ¶ 37.) Plaintiff's request for an indefinite medical leave was approved. (Def.'s Statement, ¶ 38.) Plaintiff did not return to work for the remainder of 2003. (Def.'s Statement, ¶ 39.)

---

[6] Defendant states that Plaintiff returned to work the week of October 11, 2003. (Def's Statement, ¶ 26.) Although this statement is not controverted by Plaintiff in her Statement of Material Facts in Dispute, Defendant's citation is unsupported by the record.

4

Dr. Roche again stated, in a note dated January 28, 2004, that Plaintiff remained fully disabled. (Docket No. 22, Ex. AA.) But, in the same note, Dr. Roche stated that Plaintiff could return to work in three months. (Id.)

In early March 2004, Best Buy began a nation-wide reorganization of all of its retail stores, including the Amherst, New York store. (Def.'s Statement, ¶ 43.) As part of the reorganization, the Inventory Supervisor position, the Merchandising Supervisor position, and the Loss Prevention Supervisor position were combined into the newly created Product Process Supervisor position. (Def.'s Statement, ¶ 45.) A Product Process Manager position was also created. (Def.'s Statement, ¶ 46.)

Frank Cerio, General Manager of the Amherst store, was in charge of filling the Product Supervisor positions. (Def.'s Statement, ¶¶ 4 and 46.) Cerio offered the position of Product Process Manager to Shannon Sealey, and the position of Product Process Supervisor to Haley Bolton. (Def's Statement, ¶ 48-49.) Both Sealey and Bolton are women. (Def.'s Statement, ¶ 48-49.) Sealey accepted Cerio's offer. (Def.'s Statement, ¶ 48.) Bolton declined. (Def.'s Statement, ¶ 49.)

Following Bolton's declination, Cerio performed assessments of Plaintiff, Brandon Tibbits, and Christopher Lauricella to determine who should fill the Product Process Supervisor position. (Def.'s Statement, ¶ 50.[7]) The assessment evaluated four different categories, and assigned points to each candidate based upon their last performance review. (Def.'s Statement, ¶ 53.) Of the three candidates under evaluation, Plaintiff

---

[7] Plaintiff, while not objecting to the fact that assessments were performed, contends that the assessments were unfair, and conducted in such a manner so as to ensure that Plaintiff was terminated. (Pl.'s Statement, Docket No. 22, Pt. 1, ¶¶ 1-8.)

received the lowest point total. (Def.'s Statement, ¶ 77.[8])

On March 17, 2004, Dr. Wilberforce Tamaklo, M.D., evaluated Plaintiff and found that she was "definitely unable to function or work at this point due to severe depression, and anxiety." (Def.'s Statement, ¶ 79; Docket No. 21, Ex. X.)

By letter dated March 22, 2004, Best Buy notified Plaintiff that it was terminating her employment effective April 4, 2004. (Def.'s Statement, ¶ 78; Docket No. 21, Ex. Y.) The letter stated that her termination was "not a result of a performance issue [but] is tied to the Company's goal of being a more efficient enterprise." (Docket No. 21, Ex. Y.) Plaintiff later stated that she was unable to return to work as of March 22, 2004, because she was "told" that she could not return until April. (Def.'s Statement, ¶ 78.)

**B.     Procedural History**

Plaintiff filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights. On August 15, 2005, Plaintiff received a Notice of Right to Sue from the EEOC. Thereafter, on March 16, 2006, Plaintiff commenced this suit. The matter was initially assigned to Judge Elfvin, and was transferred to this Court on October 17, 2007, after Judge Elfvin elected to take inactive status.

---

[8] Again, Plaintiff does not dispute that she received the lowest point total, but contends that the assessment was unfair, and conducted in a manner that ensured her termination. (Pl.'s Statement, ¶ 9.)

## III. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

In the context of employment discrimination cases, the United States Court of Appeals for the Second Circuit has explicitly cautioned district courts to use extra care when deciding whether to grant summary judgment because "the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited to summary

adjudication." Eastmer v. Williamsville Cent. Sch. Dist., 977 F. Supp. 207, 212 (W.D.N.Y. 1997) (quoting Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994)). Nonetheless, "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). Indeed, the Second Circuit has noted that "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." Id.

**B.   Defendant's Motion for Summary Judgment**

Defendant argues that summary judgment is warranted for two reasons. First, it contends that Plaintiff has not demonstrated a prima facie case of discriminatory termination in violation of the ADA, NYHRL, ADEA, or Title VII. Second, Defendant maintains that even if Plaintiff can establish a prima facie case, summary judgment is warranted because it had a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

**C.   Analysis**

When analyzing a case of discriminatory termination, courts apply a "burden-shifting" analysis first set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973); see also e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43, 120 S.Ct. 2097, 2106,

147 L.Ed.2d 105 (2000); Memisevich v. St. Elizabeth's Med. Ctr., No. 03-CV-1348, 2006 WL 2277964, at *4 (N.D.N.Y. Aug. 9, 2006) ("When analyzing a case of discriminatory termination, the burden-shifting analysis of McDonnell Douglas governs.")

Under this framework, the plaintiff must first establish a prima facie case of discrimination under each statute by a preponderance of the evidence. See McDonnell Douglas, 411 U.S. at 802. "The burden of establishing a prima facie case is not onerous." Texas Dep't of Comt'y Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 1094, 67 L. Ed.2d 207 (1981). "Generally, '[i]t is the judge, not the jury, who must decide whether [a] plaintiff has satisfied the requirements of McDonnell Douglas's minimal version of prima facie case.'" Gordon v. New York Cty Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000) (citing Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993)).

If the plaintiff succeeds in making this showing, a rebuttable presumption of discrimination arises, and the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. Texas Dep't of Comt'y Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094, 67 L. Ed.2d 207 (1981). For the case to continue, the plaintiff must then produce "evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." Weinstock v. Columbia Univ., 224 F. 3d 33, 42 (2d. Cir. 2000).

The burden shifting analysis applies equally to cases brought under the ADEA, Title VII, ADA, and NYHRL. See e.g., Montana v. First Fed. Savings, 869 F. 2d 100, 103 (2d. Cir 1989) (noting that the McDonnell Douglas burden-shifting framework applies to cases brought under the ADEA); Clark v. New York State Elec. & Gas Corp., 67 F. Supp. 2d 63, 78 (N.D.N.Y. 1999) ("It is appropriate to use the Title VII burden shifting framework . . . to

9

analyze a claim of retaliation under the ADA); Reeves v. Johnson World Servs., 140 F. 3d 144, 156 n. 9 (2d. Cir. 1998) (noting that NYHRL claims are analyzed under the McDonnell Douglas burden-shifting framework).

### 1. Defendant is Entitled to Summary Judgment on Plaintiff's Claim of Discrimination in Violation of the ADA and the NYHRL

Defendant argues that summary judgment is warranted because Plaintiff cannot make out a prima facie case of discrimination under the ADA and the NYHRL. (Def.'s Mem., pp. 4-9.[9]) To establish a prima facie case under both provisions, Plaintiff must demonstrate that: (1) her employer is subject to the statute; (2) she suffers from a disability within the meaning of the statute; (3) she was otherwise qualified to perform the essential functions of her job with or without reasonable accommodation; and (4) she was fired because of her disability. Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 169 (2d Cir. 2006) (citing Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001[10])). Defendant does not dispute that Plaintiff is able to satisfy the first and second elements, but argues that Plaintiff cannot satisfy the third and fourth elements. (Def.s Mem., p. 5.)

#### a. "Otherwise Qualified"

Title 42 United States Code Section 12111(8) defines a qualified individual as "an individual, who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Because

---

[9] Referring to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment . (Docket No. 21.)

[10] "[T]he same analysis of plaintiff's prima facie case applies to both her ADA and NYHRL claims." DeNardi v. DRA Imaging, P.C., 605 F. Supp. 2d 550, 557 (S.D.N.Y. 2009). The only major difference between the ADA andthe NYHRL is that the definition of disability under the New York State Executive Law is broader than the ADA definition. Id. But Defendant does not dispute that Plaintiff is disabled within the meaning of the ADA or the NYHRL.

10

regular attendance is an essential job function, an individual who is not capable of regular attendance is not qualified. Ramirez v. New York City Bd. Of Educ., 481 F. Supp. 2d 209, 221 (E.D.N.Y. 2007).

If an individual is "totally disabled and thus, unable to perform any job, no matter what its essential function," the decision to fire that individual "cannot be discriminatory even where the individual is fired because of the disability." Clark v. New York State Elec. & Gas Corp., 67 F. Supp. 2d 63, 74 (N.D.N.Y. 1999) (internal citations omitted). The determination of whether an employee is qualified is one that is made at the time of the adverse employment decision. King v. Town of Wallkill, 302 F. Supp. 2d 279, 289 (S.D.N.Y. 2004).

Having thoroughly reviewed the parties' submissions, this Court finds that Defendant is entitled to summary judgment. The undisputed facts and medical evidence of record reveal that, as of March 22, 2004, the date of the letter advising Plaintiff of her termination, Plaintiff was not otherwise qualified to perform her essential job functions. For instance, Dr. Wilberforce Tamaklo, M.D., who examined Plaintiff on March 17, 2004, a mere five days prior to the date of Defendant's letter, concluded that Plaintiff was unable to even function, let alone work. Additionally, Drs. Paterson, Roche, and Andrea E. Verrrastro, F.N.P.-C, all repeatedly, and consistently, stated that Plaintiff was fully disabled and unable to work. Even Plaintiff, who twice requested indefinite medical leaves of absence, acknowledged that she was unable to return to work as of March 22, 2004.

Dr. Roche's note dated January 28, 2004, wherein he states Plaintiff would be able to return to work in three months, does not compel a different conclusion. As an initial matter, Dr. Roche began his note by stating that Plaintiff remains fully disabled. There is

no later medical assessment by Dr. Roche that reaches a different conclusion regarding Plaintiff's status. In short, the last medical opinion by Dr. Roche was that Plaintiff was fully disabled and would remain unable to work for some time. Because all medical providers, including Dr. Roche, stated that Plaintiff was fully disabled as of March 22, 2004, Plaintiff was not qualified to perform her job duties at the time of her termination notice.

In her opposing papers, Plaintiff advances three arguments in an attempt to avoid summary judgment. First, Plaintiff points out that Defendant did not inform her that her termination was the result of an inability to work, but rather, asserted this argument for the first time after Plaintiff commenced this suit. (Pl.'s Mem., p. 12.) According to Plaintiff, Defendant's argument is invalid because it is "based upon hindsight revisionary [sic] perspective." (Pl.'s Mem., p. 12.) Second, Plaintiff contends that in early March, Dr. Roche indicated that she would be able to return to work in mid-April 2004. (Pl.'s Mem, pp. 6, 13.) Third, Plaintiff argues that she was capable of performing her job with a reasonable accommodation. (Pl.'s Mem., p. 13.)

This Court finds each argument unavailing. First, the prima facie showing of "qualified" does not turn on Defendant's reasons for terminating her, but on whether Plaintiff was, in fact, able to perform her essential job functions as of March 22, 2004. And all evidence in this case indicates that she was not. Second, Plaintiff's contention that Dr. Roche provided her with a note in March 2004, which permitted her to return to work without restriction is unsupported. No such note exists in the record. The only support for Plaintiff's statement is her own deposition testimony. In fact, this Court notes that Plaintiff failed to produce this note upon request by Defendant. Thus, this argument is unpersuasive. Lastly, Plaintiff's final argument fails for two reasons. One, there is no

evidence that Plaintiff requested an accommodation. See DeMar v. Car-Freshner Corp., 49 F. Supp. 2d 84, 96 (N.D.N.Y. 1999) (holding that the plaintiff-employee cannot hold the defendant-employer liable for reasonable accommodations that he never requested). Two, in the one-year time period preceding her termination, Plaintiff reported to work for a total of approximately one month. Her request for additional time off, after missing approximately eleven months in a year, cannot be considered a request for a reasonable accommodation. See Powers v. Polygram Holding, Inc., 40 F. Supp. 2d 195, 201 (S.D.N.Y. 1999) (noting that requests for a leave of absence of one year may constitute an unreasonable request for accommodation).

. . .

In light of the foregoing, and because Plaintiff cannot demonstrate that she was otherwise qualified, she cannot make out a prima facie case for discrimination under the ADA and the NYHRL. Consequently, Defendant is entitled to summary judgment as to these claims.

### 2. *Defendant is Entitled to Summary Judgment as to Plaintiff's ADEA and Title VII Claims*

Defendant argues that summary judgment is appropriate because Plaintiff has failed to set forth a prima facie case of discrimination under the ADEA and Title VII. To establish a prima facie case of age discrimination under the ADEA, the plaintiff must demonstrate: (1) she was within the protected age group; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003).

Similarly, to establish a claim of gender discrimination under Title VII, the plaintiff must show: (1) she belonged to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. Terry, 336 F.3d at 138. "It is well-established that ADEA claims are analyzed in the same manner as are claims under Title VII." Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994) (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S.Ct. 613, 621-22, 83 L.Ed.2d 523 (1985).

This Court agrees with Defendant that Plaintiff has not established a prima facie case of discrimination under the ADA or the NYHRL because of her failure to demonstrate that she is qualified. For all of the reasons mentioned above in the context of Plaintiff's ADA and NYHRL claims, this Court similarly finds that Plaintiff was not qualified in this context. See Williams v. R.H. Donnelley Inc., 199 F. Supp. 2d 172, 177 (S.D.N.Y. 2002) (granting defendant summary judgment after finding that plaintiff could not establish a prima facie case of race and gender discrimination under Title VII because plaintiff was not qualified due to her total disability and inability to perform any work). Consequently, Plaintiff cannot establish a prima facie case of age discrimination under the ADEA, nor can she establish a prima facie case of gender discrimination under Title VII.

## IV. CONCLUSION

In light of the foregoing, Defendant's Motion for Summary Judgment is granted in its entirety.

## V. ORDERS

IT IS HEREBY ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 21) is GRANTED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated: September 24, 2009
       Buffalo, New York

                                                    <u>/s/William M. Skretny</u>
                                                    WILLIAM M. SKRETNY
                                          United States District Judge